IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bennington Investment Group, LLC,   :
             Petitioner   :
                          :
      v.   :
                          :
Department of Environmental   :
Protection,   : No. 1046 C.D. 2019
           Respondent   : Argued: May 12, 2020

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON           FILED: June 23, 2020

Bennington Investment Group, LLC (Petitioner), petitions for review of the July 8, 2019 Adjudication and Order of the Environmental Hearing Board (Board) that dismissed Petitioner's appeal of the Department of Environmental Protection's (Department) denial of its private request under the Pennsylvania Sewage Facilities Act[1] (Sewage Facilities Act). Petitioner had requested that the Department order Franklin Township (Township) to amend its Official Wastewater Facilities Plan to allow Petitioner to forego connection to and use of public sewage facilities and build its own private sewage facility for a housing development Petitioner intends to construct in Township. Upon review, we affirm.

---

[1] Act of January 24, 1966, P.L. 1535, *as amended*, 35 P.S. §§ 750.1-750.20a.

The Department is the Commonwealth agency charged with the duty and authority to administer and enforce the Sewage Facilities Act and the rules and regulations promulgated thereunder. Adjudication and Order of the Environmental Hearing Board dated July 8, 2019 (Adjudication) at 1-2, Findings of Fact (F.F.) 1. The Department approved the Township's Official Wastewater Facilities Plan (Act 537 Plan) on April 1, 1994. Adjudication at 4, F.F. 22. Thereafter, the Dillsburg Area Authority (Authority) was created as a municipal authority tasked with providing sewer service and municipal wastewater treatment within the Township. *See* Adjudication at 2, F.F. 3-5. Per Township Ordinance No. 3-1999 (Ordinance), the Township designated the Authority as its exclusive agent for handling sewer matters within the Township. Adjudication at 2, F.F. 4. The Ordinance further provided that the Authority was to provide sewer services and municipal wastewater treatment for the Township. Adjudication at 2, F.F. 5. Section I of the Township's Act 537 Plan states that developers are expected to deal with the Authority directly in capacity-related matters. Adjudication at 2, F.F. 6.

Petitioner proposes to build a 344-unit residential subdivision project called Lexington Fields on a 66-acre plot of land in the Township. Adjudication at 2, F.F. 7 & 8. The proposed Lexington Fields development is located in an area of the Township designated by the Township's Act 537 Plan to be served by public sewers. Adjudication at 3, F.F. 11. The project is situated adjacent to the Franklintown Pump Station, a part of the Authority's sewage collection system, and also abuts a public road with public sewer lines. Adjudication at 3, F.F. 9 & 10. Petitioner never submitted a request that the proposed Lexington Fields development be connected to public sewers, and thus the Township never refused Petitioner a connection to the public sewer system. *See* Adjudication at 3, F.F. 12. Rather,

2

Petitioner submitted an Act 537 planning module to the Township that called for the construction of a 144,000 gallon per day package sewage treatment plant. Adjudication at 3, F.F. 13. The Township denied Petitioner's Act 537 planning module. Adjudication at 3, F.F. 14.

Meanwhile, on the land development side of its proposed Lexington Fields development project, Petitioner sought preliminary subdivision approval from the Township, a process which requires the submission of an Authority-approved sewer feasibility report. Adjudication at 5, F.F. 28-29. The Authority will not approve a sewer feasibility report without an executed sewer capacity reservation between an applicant and the Authority, a necessary component of which is an agreement by the applicant to pay quarterly sewer capacity reservation fees. Adjudication at 5, F.F. 30-31. At the time of Petitioner's appeal to the Board, the Authority's quarterly reservation fees were $37.31 per equivalent dwelling unit (EDU) for wastewater and $23.00 per EDU for water. Adjudication at 5, F.F. 32. The development would require 344 EDUs, consistent with the number of units proposed for the project. Adjudication at 2, F.F. 7. Claiming the reservation fees were too expensive, Petitioner refused to execute a reservation agreement with the Authority. Adjudication at 5, F.F. 36. As a result of Petitioner's unwillingness to pay the reservation fees, the Township did not grant Petitioner preliminary subdivision approval for the Lexington Fields project. Adjudication at 5, F.F. 35.

On June 16, 2015, Petitioner submitted a private request to the Department to order the revision of Township's Act 537 Plan to allow Petitioner to construct a private package sewage treatment plant for the Lexington Fields development (Private Request). Adjudication at 3, F.F. 15 & 16. On July 29, 2015, the Authority submitted comments on the Private Request noting that the Private

3

Request is inconsistent with the Township's Act 537 Plan and that the proposed development abuts a road with existing public sewers that the Authority services. Adjudication at 3-4, F.F. 17-18. On August 1, 2015, the Township also submitted comments on the Private Request to the Department. Adjudication at 4, F.F. 19. In its comments, the Township noted that its existing Act 537 Plan was adequate to meet Petitioner's anticipated sewage needs at the proposed Lexington Fields development and further noted that the Authority is the Township's exclusive agent to provide sewer services at Lexington Fields' proposed location. Adjudication at 4, F.F. 20. The Department considered these comments and the Township's Act 537 Plan in determining the Private Request. Adjudication at 4, F.F. 21. The Department did not consider the issue of Petitioner's failure to pay reservation fees to attain preliminary subdivision approval from the Township. Adjudication at 5, F.F. 37.

On November 13, 2015, the Department denied the Private Request. Adjudication at 6, F.F. 38; *see also* Department Letter to Petitioner dated Nov. 13, 2015 (Denial Letter), Reproduced Record at 10-11. Petitioner appealed the Department's denial of the Private Request to the Board, which conducted a hearing on October 4, 2017 and dismissed the appeal on July 8, 2019. *See* Adjudication at 17. Petitioner timely petitioned this Court for review.[2]

---

[2] "Our appellate review of the Board's adjudications is limited to determining whether the Board committed an error of law, violated constitutional rights, or whether its material findings of fact are supported by substantial evidence." *EQT Prod. Co. v. Dep't of Envtl. Prot.*, 193 A.3d 1137, 1148 (Pa. Cmwlth. 2018). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Eureka Stone Quarry, Inc. v. Dep't of Envtl. Prot.*, 957 A.2d 337, 344 (Pa. Cmwlth. 2008). Further, we note that

> [r]esolution of conflicts in the evidence and questions of witness credibility and evidentiary weight are within the [Board's] exclusive discretion, and this Court must, in determining whether substantial evidence exists, view the record in the light most favorable to the party that prevailed before the [Board], and give that party the

4

In this appeal, Petitioner argues the Board erred by affirming the Department's denial of Petitioner's Private Request. *See generally* Petitioner's Brief. Specifically, Petitioner argues that the Department should have granted the Private Request because the required payment of sewage capacity reservation fees deprived it of a feasible means of sewage disposal in its proposed Lexington Fields subdivision project. *See* Petitioner's Brief at 10-13. Petitioner also alleges that the Adjudication improperly focused on the Lexington Fields project as opposed to broader policy concerns. *See id.* at 13-14. Finally, Petitioner argues that the Department and the Board erred in accepting the Authority's Chapter 94 Reports into evidence. *See id.* at 14-18.

## The Private Request Denial

The Sewage Facilities Act requires municipalities to develop and implement plans for the sanitary disposal of sewage waste to, among other goals, protect public health, safety, and welfare. *See* Section 3(1) of the Sewage Facilities Act, 35 P.S. § 750.3(1). To accomplish this policy goal, the Sewage Facilities Act requires:

> Each municipality shall submit to the [D]epartment an officially adopted plan for sewage services for areas within its jurisdiction within such reasonable period as the department may prescribe, and shall from time to time submit revisions of such plan as may be required by rules and regulations adopted hereunder or by order of the [D]epartment: Provided, however, That a municipality may at any time initiate and submit to the [D]epartment revisions of the said plan. Revisions shall conform to the

benefit of all reasonable inferences that can be drawn from the evidence.

*B & R Res., LLC v. Dep't of Envtl. Prot.*, 180 A.3d 812, 817 n.2 (Pa. Cmwlth. 2018).

5

requirements of subsection (d) of this section and the rules and regulations of the [D]epartment.

Section 5(a) of the Sewage Facilities Act, 35 P.S. § 750.5(a); *see also* 25 Pa. Code § 71.11.[3]  A municipality's official sewage plan "needs to be no more than 'adequate' with respect to a particular resident's sewage disposal needs." *Gilmore v. Dep't of Envtl. Prot.* (filed Sept. 20, 2006), EHB Docket No. 2005-328-L, slip op. at 12.[4] "The resident need only have feasible disposal alternatives[,]" and "the burden remains on the resident at all times to produce evidence that the alternatives available under an official plan are infeasible." *Id.*

Where residents or property owners within a municipality feel that municipalities have failed to adhere to official sewage plans, or that those plans are inadequate to address their sewage needs, the Sewage Facilities Act allows for a private request to be made to the Department.  Section 5(b) of the Sewage Facilities Act provides as follows:

---

[3] The accompanying regulation from the Pennsylvania Code regarding this obligation of municipalities to establish official sewage plans states in very similar language that

> [m]unicipalities are required to develop and implement comprehensive official plans which provide for the resolution of existing sewage disposal problems, provide for the future sewage disposal needs of new land development and provide for the future sewage disposal needs of the municipality.  Official plans shall be developed, submitted to the Department for approval and implemented by municipalities under the [Sewage Facilities A]ct[.]

25 Pa. Code § 71.11.

[4] Generally, we defer to a Commonwealth agency's interpretation of its own regulations. *See Lancaster Cty. v. Pa. Labor Relations Bd.*, 94 A.3d 979, 986 (Pa. 2014) (stating that an administrative agency's interpretation is to be given controlling weight unless it is inconsistent with the statute itself or the statute is unambiguous).

6

> Any person who is a resident or legal or equitable property owner in a municipality may file a private request with the [D]epartment requesting that the [D]epartment order the municipality to revise its official plan if the resident or property owner can show that the official plan is not being implemented or is inadequate to meet the resident's or property owner's sewage disposal needs.

35 P.S. § 750.5(b); *see also* 25 Pa. Code § 71.14(a).[5]  Thus, the Department may approve a private request under Section 5(b) of the Sewage Facilities Act in two circumstances:  1) where it is shown that the municipality's sewage plan is not being implemented, or 2) where it is shown that the municipality's existing sewage plan is inadequate to meet the requestor's sewage disposal needs.  *Id.*; *see also Gilmore*, slip op. at 6-7.

The Department's grant of a private request is an exercise of discretion. *Pequea Township v. Herr*, 716 A.2d 678, 686 (Pa. Cmwlth. 1998).  Upon receipt of a private request, the Department alerts the appropriate municipalities and planning committees and provides a timeline for the submission of comments.  *See* 25 Pa. Code § 71.14(c).  In arriving at its decision on a private request, the Department considers the following:

> (1)  The reasons advanced by the requesting person.

---

[5] Again, the relevant Department regulation contained in the applicable portion of the Pennsylvania Code uses nearly identical language regarding private requests to the Department:

> A person who is a resident or legal or equitable property owner in a municipality may file a private request with the Department requesting that the Department order the municipality to revise or implement its official plan if the resident or property owner can show that the official plan is not being implemented or is inadequate to meet the resident's or property owner's sewage disposal needs.

25 Pa. Code § 71.14(a).

7

(2)    The reasons for denial advanced by the municipality.
(3)    Comments submitted under this section.
(4)    Whether the proposed sewage facilities and documentation supporting the proposed sewage facilities are consistent with this part.
(5)    The existing official plan developed under this chapter.

25 Pa. Code § 71.14(d)(1)-(5).  The Board reviews a Department decision regarding a private request to ensure the decision is reasonable, supported by the facts, and in accordance with law.  *Gilmore*, slip op. at 7.

Here, after reviewing the Private Request and the comments from the Township and the Authority, the Department denied Petitioner's Private Request, concluding as follows:

> 1) The [P]rivate [R]equest failed to document that the Official Plan of Franklin Township is not being implemented or is inadequate to meet the sewage disposal needs of the property as required by Section 5(b) of the Act and Chapter 71, Section 71.14(a).
>
> 2) Franklin Township's Official Act 537 Plan designates this area as a sewer service area to be serviced by the Dillsburg Area Authority, of which Franklin Township is a member.  Pursuant to Franklin Township Ordinance 3-1999, the Dillsburg Area Authority is the exclusive agent of the Township to provide public water and sewer within its service area.

Adjudication at 6, F.F. 39; *see also* Denial Letter.  Petitioner appealed to the Board, which conducted a hearing on the appeal on October 10, 2017.  *See generally* Notes of Testimony (N.T.) dated October 10, 2017.

At the hearing, Petitioner presented the testimony of its President, Philip Garland.  *See* N.T. at 10-45, 89-97 & 175-77.  Garland testified that, despite

8

his requests, the Authority refused to issue Petitioner a letter detailing the sewage capacity of its treatment plant located adjacent to the proposed Lexington Fields development. *See id.* at 4. Garland explained that he did not request a capacity reservation or a promise or guarantee of future capacity, but simply a statement or letter of capacity, describing the Authority's then-existing sewage capacity for the purpose of complying with the Township's preliminary subdivision approval process requirements. *Id.* at 13-14. Garland stated that all he needed was a simple letter stating that, as of the date of the letter, the Authority had adequate sewage capacity to service Petitioner's proposed 344 units, and that he had previously attained similar letters from other authorities and townships for other developments. *Id.* at 15.

Garland also testified that the Authority requires a developer to enter into a capacity reservation agreement and start paying reservation fees before it will release a sewage capacity letter. N.T. at 15. Garland explained that he would have needed to pay nonrefundable reservation fees on all 344 units throughout the approval process, which is quite expensive. *Id.* at 16-17. Garland noted that, if the approval process for the Lexington Fields project was to continue on for some time, the required reservation fees would be cost prohibitive and could possibly bankrupt Petitioner because they would continue to accrue as a lien. *Id.* at 17-19, 23-25 & 92. Garland explained that he reviewed one of the Authority's Chapter 94 Reports[6] to

---

[6] Garland stated that, to the best of his understanding, a Chapter 94 Report is a report that shows the loading and capacity of a sewer or municipal authority. N.T. at 29-30. Sheldon Williams, who testified on behalf of the Authority, while noting the specific requirements of a Chapter 94 Report, broadly described a Chapter 94 Report as discussing capacity and the performance of a wastewater treatment plant to ensure the Department knows the plant is performing properly and not exceeding its design or capability. N.T. at 108. Carrie Wilt of the Department also explained that a Chapter 94 Report is an annual municipal wastewater report submitted to the Department that analyzes the hydraulic and organic capacity of a wastewater

try to determine the question of capacity at the Authority's existing treatment plant, but stated that Petitioner could not use the Chapter 94 Report because of a disclaimer on the first page indicating that the report could not be used for any process related to new development under the Sewage Facilities Act. *Id.* at 17-18.

Ultimately, Garland indicated that Petitioner did not agree to pay the reservation fees and thus does not have preliminary plan approval from the Township for the Lexington Fields project. N.T. at 18 & 25. Garland testified that Petitioner decided to file the Private Request because, when the Authority would not provide a capacity letter without a reservation agreement, he assumed the Authority did not have capacity available and therefore was not following the Act 537 Plan. *Id.* at 25. On cross-examination, Garland acknowledged that the preliminary plan approval sought by Petitioner for the Lexington Fields project is controlled by the Pennsylvania Municipalities Planning Code.[7] *Id.* at 38.

Petitioner also presented the testimony of its engineer, Eric Johnston, whose office prepared the Lexington Fields preliminary subdivision land development plan for submission to the Township in 2005 and also prepared Petitioner's private sewer request submitted to the Township. *Id.* at 47-48. Johnston explained that preliminary development plans submitted to townships usually require an initial submission of proof that the project can be served by water and sewage facilities, and that such proof typically requires written correspondence from the appropriate authority stating its capacity and that the authority is willing or intending to serve the proposed project, but usually does not require a capacity

---

treatment plant as well as identifying any limitations in the collection and conveyance system. N.T. at 149.

[7] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

reservation agreement. *Id.* at 49-50. Johnston conceded, however that the Township's Ordinance required the payment of reservation fees with the submission of a preliminary development application to the Township. *Id.* at 79.

Johnston further testified that, because the Township was steadfast in its requirement that Petitioner produce a letter from the Authority that it had sewer capacity for Petitioner's planned 344-unit development, he approached the Authority to obtain a capacity letter for the Lexington Fields project. N.T. at 50 & 54. He explained that the Authority informed him that Petitioner would need to begin paying reservation fees to receive the requested letter, and that this policy prevented Petitioner from obtaining the required capacity letter. *Id.* at 53-54.

Johnston stated that he submitted the Private Request on Petitioner's behalf after the Township rejected Petitioner's submitted sewage module. N.T. at 54-55. He noted that in the Private Request, Petitioner submitted a proposed plan for a wastewater treatment plant to be located on the Lexington Fields property and which Johnston believed satisfied the Department's requirements for a private wastewater plant. *Id.* at 55-57. Johnston also acknowledged, however, that the proposed location of the Lexington Fields development is within the exclusive sewer service area of the Authority. *Id.* at 82.

In opposition to Petitioner's appeal of the Department's denial of the Private Request, the Authority presented the testimony of its general manager, Sheldon Williams.[8] *See* N.T. at 99-137. Williams explained the Authority's process for addressing capacity in new developments, which includes a preliminary planning conference and feasibility reporting, and which would have been done with the Lexington Fields project. *Id.* at 100-03. Williams indicated that the Authority

---

[8] Williams has been with the Authority since its formation in 1999. *See* N.T. at 100.

11

requires a reservation agreement at the point in a project where a developer needs an obligation of capacity from the Authority for planning modules to be submitted to townships. *Id.* at 103-04. The Authority requires the reservation agreement because it is making a commitment at that point. *Id.* at 104, 114 & 135. Williams explained that the basis for these reservation agreements is the Municipality Authorities Act,[9] which provides the authorization to charge reservation fees whenever an obligation for capacity is made.[10] *Id.* at 136-37.

Williams noted that the Authority has not traditionally supplied, and townships have not requested, the type of capacity letter contemplated by Petitioner because such letters have no meaning as they make no promise of, or commitment to, capacity going forward. *See* N.T. at 105. Instead, Williams explained, the Authority has a feasibility reporting process which provides actual engineering information that underlies a conclusion of whether the Authority can accommodate the proposed project. *Id.* at 106. Williams indicated that Petitioner could have checked the Authority's Chapter 94 Reports for a basic, and free, statement about the Authority's capacity. *Id.* at 108-10. Regarding the Chapter 94 Report warning paragraph about which Garland had testified and described as a disclaimer indicating that the report could not be used for any process related to new development under the Sewage Facilities Act, Williams explained that the warning placed on that particular Chapter 94 Report had been intended to be read in the context of Chapter 71, Section C of the Sewage Facilities Act, and pertained to the yet-unknown effects that the new Chesapeake Bay discharge limits that were coming into effect would have on that report, and that the warning reminded the reader that the Authority did

---

[9] 53 Pa.C.S. §§ 5601-5623.

[10] *See* 53 Pa.C.S. § 5607(d)(24).

not control all factors that must be considered in future project planning. *Id.* at 109-10.

Williams also testified that the Authority's reservation process is flexible. N.T. at 111. He explained that reservation costs can be controlled by a party's timing of capacity obligations and that capacity obligations can be reserved in phases. *Id.* at 111-12 & 118. He also testified that the reservation can be withdrawn when no longer required. *Id.* at 114-15. He noted, however, that Petitioner never completed the feasibility report submission process. *Id.* at 118-19.

The Department presented two witnesses at the appeal hearing. The first witness, Carrie Wilt,[11] is a Sewage Planning Specialist with the Department, a position she has held for the past 18 years. *See* N.T. at 140-41. Wilt testified that she is familiar with the Sewage Facilities Act and regulations, including Chapter 71, Section 14, which concerns the private request process. *Id.* at 141.

Wilt explained that she was the Sewage Planning Specialist who reviewed the Private Request for the Department. *See* N.T. at 142. Wilt noted that the Private Request asked the Department to order the Township to adopt a plan revision to its Act 537 Plan. *Id.* at 143. The Private Request, she explained, included the proposal for a new wastewater treatment plant to serve 344 units at the proposed Lexington Fields location that the Township had previously denied as inconsistent with the Township's Act 537 Plan. *Id.* She also explained that, pursuant to her obligations under Chapter 71, Section 14, she solicited and reviewed comments on the Private Request from the Township and the Authority. *Id.* at 145-47. Wilt stated that the comments indicated that Petitioner's proposal for a new wastewater treatment plant was not consistent with the Township's Act 537 Plan and that the

---

[11] *See* N.T. at 140-57.

13

Authority had capacity at the existing treatment plant to serve the proposed Lexington Fields development. *Id.* at 147. Further, Wilt testified that she reviewed the Township's Act 537 Plan and discovered the proposed location of the Lexington Fields development was located within the area to be served by the public sewer system. *Id.* at 149. Wilt also reviewed the Authority's Chapter 94 Reports for the calendar years 2014, 2015, and 2016, all of which that indicated that the Authority's treatment plant had hydraulic and organic capacity available to service the proposed Lexington Fields development and did not identify any issues in the collection or conveyance system. *Id.* at 150-52. The Chapter 94 Reports, Wilt explained, are 5-year projections, and thus would have been good through 2021. *Id.*

Wilt ultimately recommended that the Private Request be denied because the proposed subdivision is located within a public sewer area with adequate capacity and no collection or conveyance issues. *See* N.T. at 153-54. Wilt's recommendation noted that it appeared that Petitioner simply was unwilling to pay reservation fees and that a new wastewater treatment plant should not be constructed where the existing public sewer is available. *Id.* Wilt explained that she still holds the opinion expressed in her recommendation. *Id.* at 154.

On cross-examination, Wilt agreed that the Private Request set forth an alleged procedural impediment to the development of Lexington Fields, but that the alleged impediment was an impediment to the subdivision land development process, not a sewer issue. *See* N.T. at 155. Wilt explained that she does not consider reservation fees in determining private requests because the Sewage Facilities Act does not require the Department to do so. *Id.* at 156. Therefore, Wilt noted that, other than acknowledging that Petitioner appeared unwilling to pay the required reservation fees, she did not consider the claimed procedural impediment – the fee

14

issue – in formulating her recommendation on the Private Request. *Id.* at 155. Instead, she made her merits recommendation based on the sewage issue. *Id.*

The Department also presented the testimony of Timothy Wagner,[12] the Environmental Group Manager of the Planning Section of the Clean Water Program at the Department's Southcentral Regional Office and Wilt's supervisor. *See* N.T. at 157. Wagner testified that he is familiar with all aspects of the Sewage Facilities Act and regulations, including Chapter 71, Section 14, which concerns private requests to the Department. *Id.* at 158.

Wagner explained that he reviewed the Private Request and supporting documentation and reviewed the Ordinance, which established the Authority as the sole provider of sewer and water service in the Township. *Id.* at 159-60. The Ordinance, Wagner testified, also provided that any proposed development located within 1,000 feet of an existing municipal sewage line must tie into that line. *Id.* at 162. Wagner further noted that the proposed Lexington Fields development location is within 1,000 feet of existing public sewage facilities and lines. *Id.* at 162.

Wagner also explained that he reviewed the Township's Act 537 Plan, which indicates that the Authority serves as the Township's exclusive sewer agent, noting that the Act 537 Plan also states that the Township will allow the use of package treatment plans for new developments only if no other alternatives are available. *Id.* He explained that the package treatment option did not apply to the Lexington Fields project because other alternatives were available in the form of public sewer service available through the Authority. *Id.* at 161-62.

Wagner testified that he also reviewed the Authority's Chapter 94 Reports for 2014 and 2015, which he routinely consults in conducting reviews of

_____

[12] *See* N.T. at 157-74.

15

private requests. *Id.* at 164. Wagner testified that the reports indicated that there were neither hydraulic nor organic capacity issues at the existing treatment plant and there were no issues with the conveyance system in either report. *Id.* at 163. He concluded from these reports that the existing sewage treatment plant had adequate treatment capacity to meet Petitioner's needs for the proposed Lexington Fields development. *Id.* at 164.

Wagner stated that, in denying Petitioner's proposal to build a package treatment plant and requesting that Petitioner use the available public sewer service facilities for the Lexington Fields project, the Township was attempting to implement its Act 537 Plan. *See* N.T. at 162-63. He concurred with Wilt's recommendation because the Private Request did not provide evidence that the Township's official Act 537 Plan was either not being implemented or that it was inadequate to meet the needs of Petitioner's planned development. *Id.* at 166. Wagner explained that he did not consider the issue of reservation fees in determining the Private Request because the Department had determined that the Township was implementing its official Act 537 Plan and that there was adequate capacity at the existing treatment plant for the Lexington Fields project to be served by the public sewage facilities. *Id.* at 164-65. Further, Wagner related that the reasonableness of reservation fees is not a matter for the Department to consider; there is no provision in the Sewage Facilities Act or the attendant regulations that requires the Department to consider reservation fees in analyzing and determining private requests. *Id.* at 165. Instead, Wagner explained that the Municipality Authorities Act, under which the Department has no authority to act, provides authority for the imposition of reservation fees. *Id.* at 165 & 167.

16

In the Adjudication, the Board initially noted that Petitioner's request does not seek relief based on a revision that the Department could order the Township to make to its Act 537 Plan. The Board stated:

> [Petitioner] has not complained that [the] Township is failing to implement its [Act 537 P]lan. Indeed, it might be said that [Petitioner] is complaining because the Township *is* implementing its plan. Therefore, the issue in this case is whether [Petitioner] has shown that the Township's plan is inadequate to meet its sewage disposal needs. If it has, the Township may be ordered to revise its plan. Neither this Board nor the Department has the authority under Section []5(b) to order the Township to revise its subdivision approval process. Relief is limited to an order to the Township to revise its sewage facilities plan. And this is where the first difficulty with [Petitioner's] private request arises.
>
> [Petitioner's] complaint in a nutshell is that the Township will not process its preliminary subdivision planning approval under the [Pennsylvania] Municipalities Planning Code, 53 P.S. § 10101 . . . . Its concerns center on what the Township requires [Petitioner] to do to receive preliminary subdivision plan approval under that Code. It has not pointed us to anything in the Township's *sewage plan* that controls the timing of the reservation fee vis-à-vis preliminary subdivision approval. [Petitioner] cannot point to any provision in the Township's *sewage plan* that we can order to be revised to directly address its complaint regarding what it believes is a premature requirement to pay sewage reservation fees as part of the subdivision approval process.

Adjudication at 8-9 (emphasis in original; footnote omitted). The Board explained that, because Petitioner could not point to anything in the Township's sewage plan that it could revise to help it with the fee issue, Petitioner proposed that the Act 537

17

Plan be revised to create an exception that would allow it to simply not use the available public sewer and thereby not be subject to the required reservation fees. *See* Adjudication at 10. The Board characterized Petitioner's proposal as "little more than a ploy to get the Township to bend to its will on paying [reservation] fees." Adjudication at 11. The Board noted that Petitioner did not allege or illustrate that there was any compelling public need for the Lexington Fields project, and further noted that, in any event, the Township's Act 537 Plan allows for the construction of a private sewage treatment plant only as a last resort when all other options have failed. *See* Adjudication at 11. The Board explained:

> [t]o be blunt, [Petitioner's] proposal to build and operate a package plant immediately adjacent to the public sewer system simply makes no sense. There is no need for such a plant, and a multiplicity of redundant plants represents poor planning.

Adjudication at 11.

Ultimately, based on the evidence before it,[13] the Board noted as follows:

> There is no dispute in this case that the proposed Lexington Fields development is adjacent to the Franklintown Pump Station which is part of the [] Authority's sewage collection system. Lexington Fields also abuts a public road with public sewer lines. Lexington Fields is in an area of [the] Township's Act 537 Plan that is designated to be served by public sewer. [The] Authority's Chapter 94 Reports for 2014, 2015, and 2016

---

[13] In addition to the testimony discussed *supra*, the Board had before it the Private Request, the Authority and the Township's comments thereon, the Act 537 Plan, the Township Ordinance, and the Authority's Chapter 94 Reports for calendar years 2014, 2015 and 2016, all of which were admitted into evidence at the hearing without objections. *See* N.T. at 99, 148, 153 & 160.

18

> indicated that there were no hydraulic or organic capacity issues at its treatment plant. The Chapter 94 Reports also reported that there were no capacity issues within the collection and conveyance system. The five-year projection for [the] Authority's system indicated that there is plenty of capacity within the system for the Lexington Fields subdivision. Indeed, other than as a device to avoid the fees, [Petitioner] has not presented any evidence to show that there is any merit to installing a package plant. It is difficult to imagine how the Department could have lawfully and reasonably ordered such a plan revision.

Adjudication at 11-12 (footnote omitted). The Board determined that Petitioner failed to carry its burden of proving that the Department should have granted its Private Request to build a private package plant in an area specifically designated for public sewage service by the Township's Act 537 Plan. *See* Adjudication at 14 & Order.

We discern no error in the Board's determination. The Department denied the Private Request because Petitioner failed to submit any evidence that the Township's Act 537 Plan was not being implemented or was inadequate to meet the sewage disposal needs of Lexington Fields. *See* Adjudication at 6, F.F. 38; *see also* Joint Stipulation of Facts Not In Dispute dated Oct. 4, 2017 at 2, Stipulated Fact 8. Petitioner did not complain that the Township failed to implement its Act 537 Plan. *See* Adjudication at 8. The Township's Act 537 Plan provides that undeveloped sewer services area within 1000 feet of an existing municipal sanitary sewerage line must tie into that existing line. Adjudication at 4, F.F. 23. The Act 537 Plan further provides that use of package treatment plants for new developments will only be allowed if no other alternatives are available. Adjudication at 4, F.F. 25. The parties stipulated that the Lexington Fields project is located adjacent to a pump station that is part of the Authority's sewage collection system. Adjudication at 3, F.F. 9. The

parties also stipulated that the Lexington Fields project abuts a public road with public sewer lines. Adjudication at 3, F.F. 10. Further, the testimony established indisputably that the proposed Lexington Fields project is located in an area designated by the Act 537 Plan to be served by the public sewer. *See* N.T. at 149-50.

The Board noted that the Department considered the comments of both the Authority and the Township in making its Private Request determination. *See* Adjudication at 3-4, F.F. 17-20. The Authority's comments stated that the Private Request was inconsistent with the Act 537 Plan and that the proposed development abuts a public road with existing public sewers that the Authority services. Adjudication at 4, F.F. 18. The Township's comments stated that its Act 537 Plan is adequate to meet the anticipated needs of the Lexington Fields project and that the Authority is the Township's exclusive agent to provide sewer services at the proposed Lexington Fields location. Adjudication at 4, F.F. 20.

Additionally, the Department's witnesses testified that the reasonableness of the Township's reservation fee is not a matter for the Department to consider. *See* N.T. at 156 & 165. These witnesses explained that neither the Sewage Facilities Act nor the regulations contain any provision that require the Department to consider reservation fees in analyzing and determining private requests. *Id.* at 155-56 & 165. Instead, the witnesses related that the Municipality Authorities Act is the statute that provides authority to impose reservation fees. *Id.* at 165 & 167. The Department witnesses further testified that the Department has no authority to act under the Municipality Authorities Act. *Id.*

The submitted comments and testimony support the Department's determination that the Private Request "failed to document that the Official Plan of

20

Franklin Township is not being implemented or is inadequate to meet the sewage disposal needs of the property as required by Section 5(b) of the Act and Chapter 71, Section 71.14(a)" and the Board's affirmance thereof. Adjudication at 6, F.F. 39; *see also* Denial Letter. Therefore, we find no error of law in the Adjudication, and the material findings of fact are supported by substantial evidence of record.

We further note that Petitioner's reliance on *Gilmore* is misplaced. *See* Petitioner's Brief at 11-13. *Gilmore* did not hold that the Board had the duty or authority to revise a municipality's subdivision approval process under the Pennsylvania Municipalities Planning Code, as Petitioner suggests. *Id.* In *Gilmore*, before the township would approve a sewage planning module, the Act 537 Plan in question required the performance of in-depth topographic, soil, geological, hydrological and hydrogeological analyses for a small site that had already been extensively studied. *See Gilmore*, slip op. at 2-3. The petitioner refused to perform the required studies. *Id.* at 3. The Board held that the Department erred by not even considering the alleged procedural hurdle in the Act 537 Plan. *Id.* at 12. Unlike *Gilmore*, where the alleged procedural hurdles were present in the municipality's Act 537 Plan, the alleged procedural hurdle in the instant matter is part of Township's subdivision approval process, not its Act 537 Plan. Accordingly, *Gilmore* is inapposite.

### The Board's Focus on the Lexington Fields Project

Further, to the extent Petitioner claims that the Board improperly found that Petitioner had focused only on the impact of the Department's decision to its own development, we do not agree. Petitioner argues that the Private Request's

21

focus on the Lexington Fields development is in line with *Gilmore*, which held that private requests should challenge the application of an official sewer plan to an applicant's individual circumstances, and that to go beyond those circumstances indicates an attempt to use the private request process to improperly argue issues that do not apply to individual circumstances. *See* Petitioner's Brief at 13-14. However, the portion of the Adjudication cited by Petitioner to argue that the Board improperly criticized it for focusing solely on its development is merely a summation of the previously stated findings of fact that explain the procedural posture of the matter that led to the filing of the Private Request. *See* Adjudication at 6-7. We do not see this as a criticism of Petitioner for focusing on its own development/claim. Instead, this portion of the Adjudication put in prose form the factual and procedural background of the matter previously laid out in the findings of fact before going on to determine the matter. *See id.* Petitioner's argument that this somehow represented error is unpersuasive.

**The Admission of the Chapter 94 Reports Into Evidence**

Finally, we find unpersuasive Petitioner's argument that the Department and the Board erred in accepting the Authority's Chapter 94 Reports into evidence. *See* Petitioner's Brief at 14-18. Chapter 94 requires sewer treatment plant permittees like the Authority to submit to the Department "a complete and accurate wasteload management annual report" that will "provide for annual review of sewerage facilities and ensure that there is sufficient time to address existing operational or maintenance problems or to plan and construct needed additions[.]" 25 Pa. Code § 94.12(a). The witnesses explained that these Chapter 94 Reports analyze a treatment plant's hydraulic and organic capacity and identify any limitations in the collection and conveyance system. *See* N.T. at 108, 127, 149 &

22

168. Accordingly, the Authority's Chapter 94 Reports were certainly relevant to the question of whether the Township's Act 537 Plan, which required the use of the Authority's wastewater treatment plant, could adequately provide for Petitioner's sewage needs at the Lexington Fields development. To the extent one of the Chapter 94 Reports contained a disclaimer/warning paragraph indicating that the Chapter 94 Report could not be used for any process related to new development under the Sewage Facilities Act, the Authority's general manager testified to the context of the disclaimer/warning paragraph, and the Board accepted the explanation, as discussed *supra*. We find no error in the admission of the Chapter 94 Reports into evidence or their consideration by the Department in the determination of the Private Request.

For the above reasons, we affirm the Board's order.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bennington Investment Group, LLC, :
      Petitioner :
         :
    v.      :
         :
Department of Environmental :
Protection,      : No. 1046 C.D. 2019
      Respondent :

## O R D E R

AND NOW, this 23rd day of June, 2020, the July 8, 2019 Order of the Environmental Hearing Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge